NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| JOSE SANTOS SANCHEZ, *et al*. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 16-651 (RBK) |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| JEH JOHNSON, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss and Motion for

Summary Judgment (Doc. No 27) and Plaintiffs' Motion for Summary Judgment (Doc. No 28).

For the reasons articulated in this Opinion, the Court **GRANTS** Plaintiffs' Motion for Summary

Judgment and **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claims for Mandamus relief

and Due Process violations (Count II).  This Court relatedly **DENIES** Defendants' Motion for

Summary Judgment.


### I.      BACKGROUND

This case involves the interpretation of two provisions within the Immigration and

Nationality Act: 8 U.S.C. 1254(a)(f)(4) and 8 U.S.C. 1255(a).  The first statute classifies an alien

with Temporary Protected Status as having "lawful status."  The second statute requires an alien

seeking to adjust status to have been "inspected and admitted."  The central issue is whether

Section 1254(a)(f)(4)'s grant of Temporary Protected Status and having "lawful status" satisfies

Section 1255(a)'s threshold requirement of being "inspected and admitted."  This Court,

consistent with courts in the Sixth, Ninth, and Third Circuits, holds that it does.

❖

The parties in this case do not dispute the factual record. Jose Santos Sanchez and Sonia Gonzalez ("Plaintiffs") are husband and wife and citizens of El Salvador. Pls. St. of Mat'l Fact ("SMOF") [Doc. No. 29-1] ¶ 1. They entered the United States without inspection in 1997 and 1998. *Id.* ¶ 3. They subsequently sought two changes to their immigrant status: Temporary Permanent Status in 2001 and Registered Permanent Residence in 2014.

With El Salvador experiencing a series of earthquakes in 2001, Plaintiffs submitted applications to the United States Attorney General for Temporary Protected Status ("TPS"). *See* 8 U.S.C. §1254(a). The United States Citizenship and Immigration Services ("USCIS") granted them Temporary Protected Status. *Id.* ¶ 4. And over the next several years, the Attorney General periodically extended the TPS eligibility for Plaintiffs and other El Salvadorian nationals. *See* 81 F.R. 44645-51 (July 8, 2016).

In June 2014, Plaintiffs attempted another change of status. Compl. [Doc. No. 1]. ¶¶ 18–20. This time they filed an I-485 Application to Register Permanent Residence or Adjustment of Status. *Id.* USCIS denied the application in March 2015. *Id.*

Following USCIS's denial, Plaintiffs filed a Complaint in this Court seeking relief through a Writ of Mandamus and Declaratory Judgment regarding their statutory eligibility to adjust status. *Id.* Plaintiffs also alleged due process violations. *Id.* In November 2016, USCIS reopened their I-485 application and issued a Notice of Intent to Deny ("NOID"). Pls. SMOF ¶ 11. The NOID found Plaintiffs to be "statutorily ineligible" for adjustment of status. *Id.*

On February 8, 2017, USCIS formally denied the application for adjustment of status. *Id.* ¶ 13. In the denial letter, USCIS indicated that Plaintiff Sanchez had not been admitted and

inspected into the United States because he had engaged in unauthorized employment that

exceeded 180 days; he therefore was "statutorily ineligible" to adjust his status under 8 U.S.C.

§1255(a). *Id.* ¶ 14. USCIS also denied Gonzalez's adjustment because it was dependent on

Sanchez's approval. *Id.* ¶ 15. While USCIS recognized that Sanchez's past entry into the United

States was via parole, it concluded that neither this parole nor his TPS were proper "admissions"

to overcome the bar to his adjustment of status at 8 U.S.C. § 1255(c) for unauthorized

employment. Defs Br. [Doc. No. 27-1] at 3.

The parties now both move for summary judgment on Plaintiffs' claim for mandamus

relief and declaratory judgment under the Immigration and Nationality Act ("INA") and

Administrative Procedures Act ("APA"). 8 U.S.C. § 1101, *et. seq.*; 5 U.S.C. § 706. Following

the USCIS denial, Defendants filed the instant motion for summary judgment and motion to

dismiss for lack of jurisdiction. [Doc. No. 27]. Defendants argue that the USCIS decision

should be upheld as a matter of law, Plaintiffs' request for mandamus relief should be dismissed

as moot, and Plaintiffs' substantive due process claim should be denied. Defs Br. at 9–12.

Plaintiffs similarly filed a Motion for Summary Judgment. [Doc. No. 28]. There, Plaintiffs

argue that a grant of TPS under § 1254(a)(f)(4) is sufficient to meet the requirement of a "lawful

admission" into the United States under § 1255(a). Pls. Br. at 2. This Court now considers these

motions and the corresponding briefs.

## II. MOTIONS FOR SUMMARY JUDGMENT ON ADMINISTRATIVE PROCEDURES ACT CLAIM

### A. Standards of Review

#### 1. Summary Judgment Standard

A court should grant a motion for summary judgment when the moving party "shows that

there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The non-moving party must at least put forth probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## 2. Reviewing an Administrative Agency Decision

The scope of judicial review of agency rulemaking under the Administrative Procedures Act "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). Although a

reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may nevertheless "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

A federal court reviewing an administrative agency decision adopts the "arbitrary and capricious standard." 5 U.S.C. § 706(2)(A). Under that standard, a court may conclude that a regulation is arbitrary and capricious only "if the agency relied on facts other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible." *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 853 (3d Cir.1999). Relatedly, the "judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 843 n. 9 (1984).

The review of an agency's interpretation of a statute is a two-part analysis. *Id.* At step one, the court must determine "whether Congress has directly spoken to the precise question at issue" and "unambiguously expressed [its] intent." *Id.* at 842–43. If so, the inquiry ends, as both the agency and the court must give effect to the plain language of the statute. *Id.* at 842–43. If "the statute is silent or ambiguous with respect to the specific issue," the court proceeds to step two and inquires whether the agency's determination is based "on a permissible construction of the statute." *Id.* at 843. Under this second prong, *Chevron* "requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980, (2005)(citing *Chevron*, 467 U.S. at 843–44 & n. 11). Said another way, the agency's interpretation "governs if it is a reasonable interpretation of the statute

– not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts." *Energy Corp. v. Riverskeeper, Inc.*, 556 U.S. 208 (2009).

## B. DISCUSSION

The parties both move for summary judgment on Plaintiffs' claim for declaratory judgment under the Immigration and Nationality Act ("INA") and Administrative Procedures Act ("APA"). 8 U.S.C. § 1101, *et. seq.*; 5 U.S.C. § 706. The parties agree that the central issue in this matter is one of statutory interpretation: whether the grant of Temporary Protected Status under 8 U.S.C. § 1254(a) satisfies the threshold requirement of being "inspected and admitted or paroled into the United States" for purposes of adjustment of status under 8 U.S.C. § 1255(a). Plaintiffs argue that the plain language of § 1254(a)(f)(4) governs § 1255. Meanwhile, Defendants argue that § 1255(c) precludes Plaintiffs' application because Plaintiff Sanchez entered without inspection and engaged in unauthorized employment.

### 1. Relevant Statutes

a. *Definition of Admission and Admitted under INA: § 1101(a)(13)(A)*
   The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien to the United States *after* inspection and authorization by an immigration officer.
8 U.S.C. 1101(a)(13)(A)(emphasis added)

b. *Temporary Protected Status: § 1254(a)(f):*
   During a period in which an alien is granted temporary protected status under this section–
       (1) the alien shall not be considered to be permanently residing in the United States under color of law;

(2) the alien may be deemed ineligible for public assistance by a State (as defined in section 1101(a)(36) of this title) or any political subdivision thereof which furnishes such assistance;

(3) the alien may travel abroad with the prior consent of the Attorney General; and

(4) for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien *shall be considered as being in, and maintaining, lawful status as a nonimmigrant.*

8 U.S.C. § 1254(a)(f) (emphasis added)

### c. *Adjustment of Status: § 1255(a)*

The status of an alien who *was inspected and admitted* or paroled into the United States . . . *may be adjusted* by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if,

(1) the alien makes an application for such adjustment,

(2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and

(3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added)

### d. *Bars to Adjustment: § 1255(c)(2)*

… [S]ubsection (a) *shall not be* applicable to . . . . [A]n alien . . . who hereafter continues in or accepts *unauthorized employment* prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who *has failed* (other than through no fault of his own or for technical reasons) *to maintain continuously a lawful status since entry into the United States*;

8 U.S.C. § 1255(c)(2)(emphasis added)

### e. *Waiver of Ineligibility Bar: § 1255(k)*

An alien who is eligible to receive an immigrant visa under paragraph (1), (2), or (3) of section 1153(b) of this title (or, in the case of an alien who is an immigrant described in section 1101(a)(27)(C) of this title, under section 1153(b)(4) of this title) may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2), (c)(7), and (c)(8), if –

(1) The alien, on the date of filing an application for adjustment of status, is present in the United States *pursuant to a lawful admission*;

(2) The alien, subsequent to such *lawful admission* has not, for an aggregate period exceeding 180 days –

    (A) failed to maintain, continuously, a lawful status;

    (B) engaged in unauthorized employment; or

    (C) otherwise violated the terms and conditions of the alien's admission.

8 U.S.C. § 1255(k) (emphasis added)

## 2. Statutory Interpretation

Under the Administrative Procedure Act ("APA"), federal courts can review an agency's interpretation of a statute. 5 U.S.C. § 706. As explained, "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. In determining the intent of Congress, the Court must consider "not only the particular statutory language, but to the design of the statute as a whole and its object and policy." *U.S. ex rel. Stinson, Lyons, Gerlin Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1155 (3d Cir. 1991) (internal quotation omitted).

Here, the central point of disagreement relates to the meaning of § 1255(a), which states, "the status of an alien who was inspected and admitted or paroled" may be adjusted. *Id.* Defendants argue that Plaintiff Sanchez, who initially entered the U.S. without inspection, can never satisfy the threshold requirement of being "admitted." Meanwhile, Plaintiffs argues that the plain language of §1254(a)(f) satisfies the threshold requirement of § 1255(a). Specifically, Plaintiffs argue that Sanchez satisfied the requirement by virtue of the TPS because 8 U.S.C. § 1254a(f)(4) states, "[d]uring a period in which an alien is granted temporary protected status

under this section . . . for purposes of adjustment of status under § 1255 of this title. . . the alien shall be considered being in, and maintaining, *lawful status* as a nonimmigrant." *Id.* (emphasis added).

This Court finds the statute clear and unambiguous. Section 1254(a)(f)(4) applies to the entirety of § 1255. Again, section 1254(a)(f)(4) states, "for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien *shall be considered as being in, and maintaining, lawful status as a nonimmigrant.*" (emphasis added). This lawful status is wholly consistent with being considered as though Plaintiffs had been "inspected and admitted" under § 1255.

This Court further notes that other courts support this conclusion. *See Flores v. U.S. Citizenship and Immigration Serv.*, 718 F.3d 548, 533 (6th Cir. 2013) ("We interpret the statute exactly as writing – as allowing [the applicant] to be considered as being in lawful status as a nonimmigrant for purposes of adjustment of status under §1255."); *Medina v. Beers*, 65 F. Supp. 3d 419, 429 (E.D.Pa. 2014) ("By its clear terms, § 1254(a)(f)(4) applies to the entirety of § 1255 and thereby satisfies the 'inspected and admitted or paroled' prerequisite of § 1255(a)"). *See also Bonilla v.* Johnson, 149 F.3d 1135 (D.MN. 2016); *Ramirez v. Dougherty*, 23 F.Supp. 3d 1322, 1324 (W.D.Wash. 2014).

Defendants argue that the Court should ignore this line of cases and adopt the Eleventh Circuit's more narrow interpretation. *See Serrano v. U.S. Attorney General*, 655 F.3d 1260, 1265 (11th Cir. 1011). In *Serrano*, the Court interpreted § 1254(a)(f)(4) and § 1255(a) distinctly. *Id.* ("That an alien with Temporary Protected Status has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled.")

The Eleventh Circuit's reading offers little persuasive analysis, however. While the Plaintiffs here – like the Sixth Circuit in *Flores* and the district Court in *Ramirez* – attempt to distinguish *Serrano* on the ground that the petitioner there did not disclose his illegal entry into the country in his TPS application, *Serrano*, 655 F.3d at 1265 n.4, the Ninth Circuit correctly concluded that this factual difference does not appear to bear on the Eleventh Circuit's conclusion. *Ramirez v. Brown*, 852 F.3d 954, 960 (9th Cir. 2017). More generally, *Serrano* offers little reasoning to support its reading of these statutes. The conclusion *is* simply because it *is*.

Peeling back the veneer of *Serrano*, Defendants offer little else to support such a narrow reading of § 1254(a)(f)(4). Specifically, Defendants conclude that Sanchez's lawful status was not "maintained" under § 1254 because of his unauthorized work prior to the grant of Temporary Protected Status. This argument is fundamentally flawed, however. Most obviously, § 1254(a)(f)(4) governs "a period in which an alien is *granted* temporary protected status. . ." *Id.* (emphasis added). The government, however, focuses on Sanchez's work in the 1990s, long before his grant of TPS. Thus, the government essentially argues that work predating Sanchez's lawful status bars his later ability to "maintain" a lawful status.

This reading of § 1254 does not make sense to the Court. In the most simplistic and common-sense terms, a person must *first* have lawful status in order to "maintain" that lawful status. By way of analogy, a person who fails to maintain her garden must first have a garden. The government ignores this common sense understanding and instead insists that Plaintiff Sanchez could never have maintained lawful status "because of the period of his unlawful status and unauthorized employment *prior* to obtaining TPS." Defs Br. at 12.

The Defendants' additional arguments are unpersuasive. Similar to the government in *Medina*, Defendants here argue that the references to "admission" and "lawful status" within sections 1254 and 1255 refer to separate requirements under the law. Defendants accordingly conclude that the term "admission" and "admitted" mean a *physical* entry into the United States – "a positional event." Defs Br. at 16 (emphasis added). Relying on both § 1101(a)(13)(A) and the Third Circuit's ruling in *Hanif v. Attorney General of the United States*, 694 F.3d 2479 (3d Cir. 2012), Defendants suggest that obtaining "lawful status as a nonimmigrant" under § 1254(a) cannot mean physical admission under § 1255.

Again, this Court is not fooled by the government's careful attempt to parse words in light of § 1255's clear language. *See Medina*, 65 F. Supp. 3d at 436 ("Defendants' repeated attempts to twist this basic language into either meaning something extremely specific or applying only to specific portions of § 1255 constitute tortured interpretations that do not comport with a plain language reading.") Nor is this Court convinced by the argument for blind deference to the agency's determinations. *See Flores*, 718 F. 3d at 555 ("[b]eing consistently wrong does not afford the agency more deference than having valid reasoning.")

While this Court relies predominantly on the statute's clear and unambiguous language, it agrees with Judge Buckwalter's analysis in *Medina* when considering the Defendant's remaining arguments. *Medina*, 65 F.Supp.3d at 429–36 (addressing the government's arguments that (1) Congress intended different meanings for the words "lawful status as nonimmigrant" from "inspected and admitted or paroled"; (2) if plaintiff's interpretation is correct, there would be no need for § 1255 to separately refer to admission or parole as a threshold requirement in subsection (a), and to refer to the failure to maintain lawful status as a bar to eligibility in subsection (c); (3) the plain language of § 1254(a)(f) addresses only the bar to adjustment of

status in § 1255(c)(2); (4) plaintiff's interpretation of the statutory language conflicts with portions of § 1255; (5) the Court should apply *Serrano*; and (6) the government's interpretation is consistent with Congressional intent. *See also Bonilla v. Johnson*, 149 F.Supp.3d 1135 (D.MN. 2016) (summarizing *Medina*'s analysis of the arguments raised by the government). Put simply, the government's attempts, while numerous, simply fail to overcome this Court's reading of the statutes in question. Therefore, this Court finds that a grant of Temporary Protected Status under § 1254(a)(f)(4) is sufficient to meet the requirement of "inspected and admitted" under § 1255(a). Relatedly, the agency's ultimate decision was arbitrary and capricious.

To the extent that Plaintiffs ask for approval of their I-485 application, Proposed Order [Doc. No 28-2], this Court notes that adjustment of status under 8 U.S.C. 1255(a) is a discretionary application reserved by the Attorney General. *Id.* Thus, while the previous application was based on a fundamental misinterpretation of the controlling statutes, this Court cannot grant the application as a matter of law. The case is therefore remanded back to the USCIS for further review.

## III.     DEFENDANTS' MOTION TO DISMISS

### A.  Motion to Dismiss Standard

In considering a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ). A complaint survives a motion to dismiss if it contains enough factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In reviewing a Motion to Dismiss, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations," the court "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## B. Plaintiffs' Request for Mandamus Relief

Defendants seek dismissal of Plaintiffs' request for a writ of mandamus. When USCIS has already adjudicated an alien's application for adjustment of status, a petition for writ of mandamus is considered moot because there is no justiciable case or controversy. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). As discussed, after the filing of Plaintiffs' complaint, the USCIS issued a denial of Plaintiffs' application to adjust status. Plaintiffs' mandamus claim is therefore dismissed as moot.

## C. Plaintiffs' Due Process Claim

Defendants similarly seek to dismiss Plaintiffs' claim of due process violations. The complaint indicates that this is a substantive due process claim because Defendants "fail[ed] to give Plaintiffs [a] meaningful opportunity to challenge the basis of the denial . . ." Compl. at 10.

To state a due process claim under the Fifth Amendment, Plaintiffs first must establish they have been deprived of a protected interest. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). A protected interest is a "legitimate claim of entitlement." *Bd. Of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, Plaintiffs' due process claim fails because they cannot show they are entitled to the adjustment of status. As explained, an adjustment of status under 8 U.S.C. 1255(a) is a discretionary determination made by the Attorney General. *Id.* The Third Circuit explained in *Mudric*, "While an alien may be eligible for a grant of asylum or an adjustment of status under the immigration laws, he is not entitled to such benefits as a constitutional matter." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006).

This Court further notes that Plaintiffs' reliance on *Shaughnessy* in the complaint is misguided. *U.S. ex. Rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954). There, the Supreme Court found a substantive due process violation because the agency "fail[ed] to exercise its own discretion." *Id.* at 268. As explained, the USCIS did exercise discretion and denied the application. Even though this Court found the determination to be arbitrary and capricious, the agency did not "fail" to exercise discretion like the agency had in *Shaughnessy*. This claim is therefore denied.


IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Summary Judgment as to the Administrative Procedures Act is **GRANTED**, and Defendants' competing Motion for Summary Judgment is **DENIED**. In addition, Defendants' Motion to Dismiss Plaintiffs' claims based on mandamus relief and due process violations is **GRANTED**. The case shall, therefore, be

remanded to the United States Citizenship and Immigration Service for further review consistent with this Opinion and related Order.


Dated:   12/7/2018                                                  s/ Robert B. Kugler

                                                                    ROBERT B. KUGLER

                                                                    United States District Judge